IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BILLY AUBERT,<br><br>              Plaintiff,<br><br>     vs.<br><br>CAROLYN W. COLVIN, Commissioner<br>of Social Security,<br><br>              Defendant. | CV 13–120–M–DWM-JCL<br><br><br>FINDINGS &<br>RECOMMENDATION |

Plaintiff Billy Aubert brings this action under 42 U.S.C. § 405(g) seeking

judicial review of the decision of the Commissioner of Social Security denying his

application for disability insurance benefits and supplemental security income

under Titles II and XIV of the Social Security Act (the Act), 42 U.S.C. §§ 401-

434, §§1381-1385.

I.     **Procedural Background**

Aubert applied for benefits in June 2011, alleging disability since March 15,

2010, due to stroke, epilepsy, schizophrenia, bipolar disorder, manic depression,

and anxiety.  (Tr. 82, 105).  Aubert's application was denied initially and on

reconsideration, and he requested an administrative hearing which took place on

May 15, 2012. (Tr. 369-483). Aubert appeared with counsel at his hearing, and on July 18, 2012, the ALJ issued a decision finding that Aubert was not disabled within the meaning of the Act. (Tr. 17-33). The Appeals Council denied Aubert's request for review, making the ALJ decision final for purposes of judicial review. (Tr. 6-9). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Aubert was 46 years old at the time of his alleged onset date, and 48 years old at the time of the ALJ's decision.

## II.   Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v.*

*Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## III.  Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations.  20

C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled.  20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

## IV.  Discussion

The ALJ found at step one that Aubert met the insured status requirements of the Act through September 14, 2014, and had not engaged in substantial gainful activity since his March 2010 alleged onset date.  (Tr. 19).  At step two, the ALJ found that Aubert had the following severe impairments: seizures, transient ischemic attack, borderline intellectual functioning, bipolar I disorder, and

cannabis abuse. (Tr. 19). The ALJ concluded at step three that Aubert did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (Tr. 22). The ALJ also found that while Aubert's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects" of those symptoms were not entirely credible. (Tr. 27). The ALJ found that Aubert was capable of a limited range of medium work, and could perform past relevant work as a courtesy clerk. (Tr. 31). Alternatively, the ALJ there were other jobs that exist in significant numbers in the national economy that Aubert could also perform, including unskilled work as a bench assembler, motel cleaner, dishwasher, hand bander, or food and beverage clerk. (Tr. 33).

## A.    Severe Impairments

Aubert argues the ALJ erred at step two by not including schizophrenia, anxiety, paranoia, and depression among the list of his severe impairments.

An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.921. An impairment may be considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85-

28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 416.908.

The ALJ considered the evidence relating to Aubert's alleged mental impairments at length in his step two discussion. The ALJ ultimately found that Aubert's borderline intellectual functioning and bipolar disorder were severe, but concluded that his "alleged schizophrenia [was] not medically substantiated based on the entire longitudinal record," which reflected a history of heavy psychoactive drug use. (Tr. 19-20). Aubert's step two argument is cursory at best, and he does not point to any evidence suggesting that the ALJ's step two assessment was erroneous. Substantial evidence supports the ALJ's findings at step two of the sequential evaluation process.

**B.    Listed Impairments**

Aubert argues the ALJ erred by not specifically considering whether he met or equaled the criteria for presumptive disability based on mental retardation, as set forth in Listing 12.05.

At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments,

meets or equals an impairment listed in 20 C.F.R. P. 404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d).

To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404. 1526(a). The Ninth Circuit has made clear that the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that his impairments meet or medically equal all of the criteria of a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Listing 12.05's introductory paragraph states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20

C.F.R. P. 404, Subpt. P, App. 1, § 12.05. A claimant who can demonstrate the onset of an impairment causing deficits in adaptive functioning manifesting before age 22 may then satisfy the remainder of the listing by showing that the severity criteria of paragraph A, B, C, or D are satisfied. Aubert argues he satisfies the criteria of paragraph C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. P. 404, Subpt. P, App. 1, § 12.05C.

Aubert argues he satisfies the criteria of paragraph C because testing conducted by examining psychologist Dr. David Mahoney showed that he had a full scale IQ of 70, and he has other impairments imposing significant work-related limitations. (Tr. 239-45). While Dr. Mahoney did find that Aubert had a full scale IQ of 70, he concluded that Aubert's general cognitive ability, and verbal and nonverbal reasoning abilities, were all within the borderline range of intellectual functioning. (Tr. 242). Dr. Mahoney diagnosed Aubert with borderline intellectual functioning and bipolar disorder. (Tr. 245). The ALJ accepted Dr. Mahoney's diagnoses, specifically discussed his IQ test results, and included borderline intellectual functioning and a bipolar disorder as severe impairments at step two. (Tr.19).

To establish disability based on mental retardation under Listing 12.05, however, Aubert was required to do more than simply show that he had a full scale IQ of between 60 and 70. As set forth above, Listing 12.05's introductory paragraph also requires evidence of "deficits in adaptive functioning" with an onset prior to age 22. Aubert has not pointed to any evidence that he satisfies these criteria, and he has not been diagnosed with mental retardation. To the contrary, the record reflects that Aubert earned a high school diploma with a B-,B+ average and worked for 11 years with the same mental impairments he now claims render him disabled. (Tr. 93, 253). And as discussed by the ALJ, Aubert was only moderately limited in his activities of daily living and could accomplish tasks like caring for his own personal needs, going to the library, grocery shopping, and checking email. Tr. 23, 27-28; 114-21).Absent any evidence of deficits in adaptive functioning prior to age 22, the ALJ permissibly bypassed Listing 12.05 and focused instead on the question of whether Aubert met or equaled the criteria of Listing 12.04 for affective disorders, Listing 12.09 for substance addiction disorders, or any of the section 11.00 listings for neurological impairments.[1] (Tr. 22-24).

_____

[1] To the extent Aubert maintains the ALJ erred by failing to apply the special technique for evaluating mental impairments described in 20 C.F.R. § 404.1520a and *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011), he is mistaken. The ALJ specifically considered and discussed the degree of Aubert's functional

## C.    Medical Opinions

Aubert argues the ALJ erred in evaluating the opinions of treating physician Dr. John Tremper, examining psychologist Dr. David Mahoney, and examining physician Dr. Greg Vanichkachorn.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard a treating physician's opinion whether or not that opinion is contradicted.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting

_____

limitations in the four requisite areas – activities of daily living, social functioning, concentration/persistence/pace, and episodes of decompensation.   20 C.F.R. § 404.1520a(b)-(c).  (Tr. 24).

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. Similar standards apply to the ALJ's evaluation of an examining physician's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

        1.    <u>Dr. John Tremper</u>

Aubert established care with primary provider Dr. John Tremper on June 23, 2011, a few days after visiting the emergency room with symptoms of anxiety. (Tr. 212, 231). Aubert told Dr. Tremper he had been "off [his ]meds' for too long, and [could] feel it." (Tr. 231). Dr. Tremper prescribed Depakote and Risperdal for hypertension, seizures, and bipolar disorder. (Tr. 231). Dr. Tremper treated Aubert until November 2011, seeing him a total of six more times. (Tr. 220-29, 263). In March 2012, Dr. Tremper completed a form provided by Aubert's counsel on which he indicated by check-mark, with no explanatory narrative, that Aubert would frequently be off task as a result of mental or physical symptoms and/or medication side effects. (Tr. 261). Dr. Tremper similarly indicated by check-mark that Aubert would have good and bad days, and would miss three or more days of work per month. (Tr. 261). Aubert argues the ALJ did not provide

sufficiently specific and legitimate reasons for discounting Dr. Tremper's opinion.[2]

The ALJ considered Dr. Tremper's opinion assigned it little weight in large part because it was not supported by his treatment notes. (Tr. 29). By late July 2011, Dr. Tremper wrote that Aubert was "doing well." (Tr. 223). And as the ALJ correctly pointed out, Aubert told Dr. Tremper in November 2011 that he was "doing well with no bipolar episodes" and no seizures. (Tr. 263). The ALJ reasonably decided that Dr. Tremper's March 2012 opinion as to the debilitating severity of Aubert's limitations was not supported by his contemporaneous treatment notes, and discounted it on that basis. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ may reject treating doctor's opinion when treatment notes "provide no basis for the functional restrictions" identified in the opinion).

The ALJ also observed that Dr. Tremper's opinion was inconsistent with other evidence of record, including the opinion of examining psychologist Dr. David Clark. (Tr. 29, 311). Dr. Clark examined Aubert in January 2011, and concluded that he was capable of understanding, remembering, and carrying out simple instructions and working a 40-hour week. (Tr. 312). The ALJ reasonably

_____

[2] Because Dr. Tremper's opinion was contradicted by that of the state agency physicians (Tr. 46-54) and examining psychologist Dr. David Clark (Tr. 311), the ALJ could reject it for specific and legitimate reasons.

gave Dr. Clark's opinion as to Aubert's mental capabilities more weight than Dr. Tremper's in part because of Dr. Clark's "greater professional expertise as a clinical psychologist" and because it was "better supported by mental status findings on examination." (Tr. 29).

The ALJ also discounted Dr. Tremper's March 2012 opinion because it was "conclusory in nature and unsupported by an explanation." (Tr. 29). This too was a specific and legitimate reason for giving the opinion little weight. The form at issue consists of six questions, all of which Dr. Tremper answered by check-mark or by circling the appropriate response. He provided no explanatory narrative for any of his answers. The ALJ reasonably gave Dr. Tremper's opinion little weight in light of its conclusory nature. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may reject a treating physician's opinion that is "conclusory and brief and unsupported by clinical findings").

The ALJ also specifically noted that during the period Aubert consulted with Dr. Tremper, "the doctor used the term bipolar disorder but did not describe signs and symptoms of this disorder and prescribed medications" anywhere in his treatment notes. (Tr. 20). As the ALJ pointed out, medical expert Dr. Michael Enright testified that Dr. Tremper appeared "to have just taken the diagnosis that was generated earlier," when Aubert was heavily abusing medications. (Tr. 442).

Dr. Enright's testimony, which the ALJ considered as part of his step three analysis, supports his decision to assign little weight to Dr. Tremper's March 2012 assessment.

### 2. Dr. Greg Vanichkachorn

Aubert next argues the ALJ did not give enough weight to a report prepared by Dr. Vanichkachorn, who performed a consultative examination in October 2011 and assessed Aubert's functional capacity. (Tr. 238). Dr. Vanichkachorn recommended that Aubert not "be allowed to perform any safety-sensitive duties" in light of his mental health conditions and neurological complaints, and that he "not work around unprotected heights or dangerous machinery." (Tr. 238). Dr. Vanichkachorn identified "no other physical limitations to work," but wrote that "[t]he chronic and intermittent nature of [Aubert's] mental health diagnoses [would] make reliable work difficult and [would] affect his ability to interact socially." (Tr. 238). Dr. Vanichkachorn observed that Aubert's "mental health symptoms [were] well controlled with medications" and recommended that he "undergo further neurological and medical evaluation prior to being employed secondary to concerns about examinee and public safety." (Tr. 238). Dr. Vanichkachorn believed that "[w]ith full evaluation and continued treatment by an neurologist and mental health provider, [Aubert] may return to gainful

employment." (Tr. 238).

The ALJ considered Dr. Vanichkachorn's report and said he "accepted the majority of" his opinion. (Tr. 30). The ALJ agreed that Aubert had severe mental and neurological impairments, and adopted Dr. Vanichkachorn's limitation regarding heights and machinery in his residual functional capacity assessment. (Tr. 25, 30). To the extent Dr. Vanichkachorn suggested Aubert would be unable to work due to his mental impairments, however, the ALJ found his opinion was "not consistent with other records that show [Aubert's] bipolar condition [was] under control with treatment and [was] outside his area of practice." (Tr. 30). The medical records discussed by the ALJ indeed reflect that Aubert's mental impairments were well-controlled on medication. (*See, e.g.,* r. 183, 186, 245, 247, 263). It was also legitimate for the ALJ to give Dr. Vanichkachorn's opinion as to the severity of Aubert's mental limitations less weight because he was a family physician, not a psychiatrist or psychologist. *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); 20 C.F.R. § 404.1527(c)(5).

### 3. Dr. David Mahoney

Psychologist Dr. David Mahoney also examined Aubert in October 2011. (Tr. 239-45). As discussed above, Dr.Mahoney found that Aubert had a full scale IQ of 70, which placed him in the borderline range of intellectual functioning. (Tr.

242).  Dr. Mahoney diagnosed Aubert with borderline intellectual functioning and bipolar disorder.  (Tr. 245).  Dr. Mahoney noted that Aubert's medication was stabilizing his condition, and assigned Aubert a GAF score of 60, indicating, at most, moderate symptoms.  (Tr. 245).  Dr. Mahoney explained that seizures and strokes had increased Aubert's anxiety, and he was "not able to function to his previous capacity."  (Tr. 245).

Although the ALJ did not expressly say how much weight he was giving to Dr. Mahoney's opinion, he evidently afforded it some weight because he agreed that Aubert's borderline intellectual functioning and bipolar disorder were severe impairments.  (Tr. 19).  The ALJ also gave some weight to the GAF score assigned by Dr. Mahoney, and in doing so noted it was consistent with the 65/70 GAF score assigned by Aubert's psychotherapist, Dr. Amy Paris, in March 2012.  (Tr. 30, 255).  Also consistent with Dr. Mahoney's opinion, the ALJ incorporated several mental imitations into his residual functional capacity assessment.  For example, the ALJ found that while Aubert could remember and follow "very short and simple instructions" he could not "understand and remember detailed instructions and does not have the ability carry out detailed instructions due to his borderline intellectual functioning and possible side effects" of his marijuana use.  (Tr. 25).

To the extent Dr. Mahoney's opinion suggested that Aubert's limitations were more severe than those set forth in the residual functional capacity assessment, any error on the ALJ's part in not specifically delineating his reasons for discounting that opinion was harmless because it was "inconsequential to the ultimate nondisability determination in the context of the record as a whole" " *Moline*, 674 F.3d at 1122. *See, e.g., Clark v. Colvin*, 2014 WL 639418 *8 (D. Mont. 2014); *Morales v. Colvin*, 534 Fed. Appx. 589, 591 (9th Cir. 2013) (unpublished) (finding ALJ's failure to address letters co-written by treating physician was harmless error where there were other reasons to reject them); *Hamilton v. Commissioner Social Sec.* Admin., 368 Fed. Appx. 724, 726 (9th Cir. 2010) (unpublished) (finding ALJ's failure to specifically discuss treating doctor's opinion was harmless error where the ALJ's decision otherwise contained "numerous specific and legitimate reasons for rejecting a conclusion that [the claimant] was disabled and so could not work); *Zettelmeier v. Astrue*, 387 Fed. Appx. 729, 731-32 (9th Cir. 2010) (unpublished). It is clear from the ALJ's discussion as a whole that he considered Dr. Mahoney's opinion and weighed it against other evidence in the record, which showed that Aubert's impairments were reasonably controlled on medication.

### D. Credibility

Aubert argues the ALJ did not provide sufficiently clear and convincing reasons for discrediting his testimony. If the ALJ finds "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). Aubert met his initial burden because he provided evidence that he has underlying impairments that could reasonably be expected to produce some degree of symptoms, and the ALJ did not find that he was malingering. As set forth below, however, the ALJ then provided clear and convincing reasons for finding Aubert's subjective testimony only partially believable.

Aubert testified that he cannot work due to depression, seizures, and memory problems. (Tr. 378-84). He stated that he gets up at 8:00 in the morning, and then sits and watches television all day and talks to his wife. (Tr. 387). Aubert said that he and his wife would shop for groceries twice a week and that they would walk a mile each way to get to the store. (Tr. 389).

The ALJ considered Aubert's testimony and found him "to be generally

credible except to the extent that [he] alleged severe disabling depression/bipolar symptoms and uncontrolled seizures and a complete inability to work due to his mental health and seizure problems." (Tr. 28). The ALJ discounted Aubert's testimony as to the debilitating extent of his symptoms in part because it was not consistent with the objective medical evidence. (Tr. 28). The ALJ then discussed that evidence, which showed for instance that in November 2011 Aubert was "doing well with no bipolar episodes" and no seizures. (Tr. 28, 263). The ALJ also found that the GAF scores assigned by Dr. Mahoney and Dr. Paris, which were indicative of mild to moderate limitations, were inconsistent with Aubert's testimony that he was essentially so depressed that he did not want to get out of bed. (Tr. 28, 384). In March 2012, which is when Dr. Paris assigned Aubert a GAF of 65/70, treating physician Dr. Donna Smith observed that Aubert's anxiety and depression were "much better now that he is back on his meds." (Tr. 247). Dr. Smith described Aubert's mood as euthymic and characterized his depression as mild. (Tr. 248). Likewise, the ALJ pointed out that Aubert and his wife both reported that, with the exception of the week before the hearing when they allege he had two seizures in his sleep, Aubert had been seizure free since starting Depakote and Risperdal. (Tr. 31). The ALJ reasonably found that this evidence, which showed that Aubert's impairments were reasonably controlled on

medication, undermined his allegations that he was completely incapacitated.

The ALJ also pointed out when considering Aubert's credibility although his activities of daily living were not extensive, they did "not support allegations that he [could] not get up due to depression and [could not] do simple tasks on a regular basis." (Tr. 28). For instance, the ALJ noted that Aubert was able to care for his personal needs, go to the library, check email, and walk to the grocery store on a regular basis. (Tr. 28, 114-21). While Aubert's activities were certainly limited, the ALJ permissibly found they were not entirely consistent with Aubert's testimony. These were sufficiently clear and convincing reasons, supported by substantial evidence, for finding Aubert less than entirely credible.

### E.    Lay Testimony

Aubert contends the ALJ did not provide germane reasons for discounting his wife's lay witness testimony.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting

*Dodrill*, 12 F.3d at 919). Competent lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9ᵗʰ Cir. 1996).

Nonetheless, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9ᵗʰ cir. 2012). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina* 674 F.3d at 1114. Moreover, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's]claims.'" *Molina v. Astrue*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8ᵗʰ Cir. 2011)).

Aubert's wife, Wendy Aubert, testified at the administrative hearing. (Tr. 407-35). She testified that Aubert had a mental breakdown in 2004 and had been on psychiatric medications since then. (Tr. 408). She stated that he was "a lot better" on his current medications and had gone for almost a year without a major seizure. (Tr. 409, 413, 417-19). But she also said that Aubert "has a lot of days that he just, he can't even function to get out of bed, but then, you know, he may make it half the day in bed and then finally get up to eat something, but he'll be so depressed that he won't want anybody around, won't want to talk to nobody,

won't go anywhere, won't do anything." (Tr. 428-29).

The ALJ considered Wendy Aubert's testimony in conjunction with Aubert's testimony. (Tr. 28). To the extent he found her not credible, he did so for the same reason, namely, that the medical records were not consistent with her testimony as to the disabling severity of Aubert's depression and other impairments. (Tr. 28). Even if the ALJ did not provide sufficiently germane reasons for discrediting Wendy Aubert's testimony, any error was harmless because the same evidence that the ALJ referred to in discrediting Aubert's testimony also discredits Wendy Aubert's statements. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). The Court thus concludes that any error on the ALJ's part in not providing germane reasons for discounting the lay witness testimony was harmless. *See Molina,* 674 F.3d at 1122 (ALJ's failure to consider lay witness testimony was harmless where that testimony "did not describe any limitations beyond those" described by the claimant, "which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons.)*; Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (upholding rejection of family member's testimony, which was similar to the claimant's).

## V.   <u>Conclusion</u>

For all of the above reasons, the Court concludes that the ALJ's decision is

based on substantial evidence and free of prejudicial legal error.  Accordingly,

IT IS RECOMMENDED that Aubert's motion for summary judgment be

DENIED and the Commissioner's decision be affirmed.

DATED this 14th day of October, 2014

_____
Jeremiah C. Lynch
United States Magistrate Judge