FILED

DEC 03 2014

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BILLY W. AUBERT,<br><br>        Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | CV 13–120–M–DWM–JCL<br><br>ORDER |

## INTRODUCTION

Magistrate Judge Jeremiah C. Lynch issued Findings and Recommendations on October 14, 2014, in which he recommended the Court deny summary judgment for Plaintiff Billy W. Aubert ("Aubert") and grant summary judgment for Defendant Carolyn W. Colvin, Commissioner of Social Security (the "Commissioner"). (Doc. 20.) The Court adopts Judge Lynch's Findings and Recommendations in full.

## STATEMENT OF FACTS

Aubert applied for disability insurance benefits and supplemental security income under Titles II and XIV of the Social Security Act ("the Act") on June 30,

1

2011, alleging disability since March 15, 2010, due to stroke, epilepsy, schizophrenia, bipolar disorder, manic depression, and anxiety. (Tr. at 17, 34.) The claims were denied initially and on reconsideration. (Tr. at 17.) Aubert was granted an administrative hearing, which took place on May 15, 2014. (*Id.*) After the hearing, the administrative law judge ("ALJ") issued a decision that Aubert was not disabled within the meaning of the Act. (Tr. at 33.)

The Appeals Council denied Aubert's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. at 6.) Aubert filed a complaint with this Court, appealing the ALJ's decision, and the case was referred to Judge Lynch. (Doc. 1.) Aubert moved for summary judgment on June 4, 2014, claiming that the ALJ's decision should be reversed and remanded because the ALJ erred in five points of his decision. (Docs. 13, 15.) The Commissioner filed a cross motion for summary judgment on August 6, 2014, to affirm the ALJ's decision. (Doc. 18.) Judge Lynch issued his Findings and Recommendations on October 14, 2014, recommending the Court deny Aubert's motion for summary judgment and grant the Commissioner's motion because the ALJ's decision applied the correct legal standard and was supported by substantial evidence. (Doc. 20.)

Aubert objected to the Findings and Recommendations on October 28, 2014, asserting two points of error. (Doc. 21.) The Commissioner responded on

November 11, 2014, in support of Judge Lynch's Findings and Recommendations. (Doc. 23.)

## STANDARD

On dispositive motions, the parties are entitled to *de novo* review of the specified findings or recommendations to which they object. 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Under a *de novo* review, a district court will uphold the Social Security Administration's disability determination unless it is based on legal error, or is not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "This is a highly deferential standard of review." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ryan*, 528 F.3d at 1198. It is "more than a mere scintilla but less than a preponderance." *Id.*

Where there are no objections to findings or recommendations, the court is to give the level of consideration it deems appropriate. *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions under a *de novo* or any other standard, when neither party objects to those findings"). This Court reviews

findings and recommendations under a clear error standard when neither party objects. A finding or recommendation will be upheld under this standard unless the Court is left with "a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pens. Trust for S. Cal.*, 508 U.S. 602, 622 (1993).

## ANALYSIS

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520. At step one, the ALJ considers whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If the ALJ finds that the claimant is not engaged in substantial gainful activity, the ALJ determines at step two whether the claimant has an impairment, or combination of impairments that qualify as severe under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the ALJ moves on to step three, where the ALJ considers if those impairments meet or equal one of the specific impairments listed in the regulation. 20 C.F.R. § 1520(a)(4)(iii). If the claimant meets or equals one of the specific listed impairments, then the claimant is considered disabled. *Id.* If the claimant does not meet or equal one of these impairments, the ALJ determines at step four whether the claimant has the residual

functional capacity to do his past relevant work. 20 C.F.R. § 1520(a)(4)(iv).

Finally, if the claimant has shown he cannot engage in past relevant work, the ALJ will consider whether the claimant can perform other work in the national economy. 20 C.F.R. § 1520(a)(v). The claimant bears the burden of proving disability during the first four steps of the process. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

The ALJ found that Aubert was not engaged in substantial gainful activity, and that he had five severe impairments: seizures, transient ischemic attack, borderline intellectual functioning, bipolar I disorder and cannabis abuse. (Tr. at 19.) However, the ALJ found that none of Aubert's impairments, alone or in combination with each other, met or equaled any of the specific listed impairments. (Tr. at 22.) Finally, the ALJ determined that Aubert could perform his past relevant work as a courtesy clerk, (Tr. at 31), and, alternatively, Aubert could perform other work as a bench assembler, motel cleaner, dishwasher, hand bander, or food and beverage clerk, (Tr. at 32-33).

I. **Severe impairments, medical opinions, and Aubert's credibility**

Judge Lynch found that substantial evidence supports the ALJ's findings at step two of the sequential evaluation process that schizophrenia, anxiety, paranoia, and depression are not included among Aubert's list of severe impairments. (Doc.

20 at 6.) Judge Lynch also found that the ALJ provided sufficiently specific and legitimate reasons for discounting the controverted opinions of Dr. John Tremper, a treating physician, Dr. David Mahoney, an examining psychologist, and Dr. Greg Vanichkachorn, an examining physician, and that the reasons provided were supported by substantial evidence in the record. (*Id.* at 10.) Finally, Judge Lynch found that the ALJ provided clear and convincing reasons for discrediting Aubert's testimony. (*Id.* at 18.) Aubert did not object to these findings. After reviewing the record and Judge Lynch's analysis, this Court finds no clear error in Judge Lynch's Findings and Recommendations on these points.

## II. Listing 12.05(C)

At step three of the sequential evaluation process, the ALJ considers whether the claimant meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). To meet the requirements of a listing, the claimant must have a "medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). To equal the requirements of a listing, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairments." 20 C.F.R. § 404.1526(a). The claimant bears the burden of proving disability at this step. *See*

*Molina,* 674 F.3d at 1110.

"The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings." 20 C.F.R. Pt. 404, Subpt. P, App. 1. This is because listing 12.05 has two parts. The first part is an introductory paragraph, also known as the diagnostic description for intellectual disability, which states, "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *Id.* If a claimant satisfies this part, the commissioner determines whether the claimant's impairments meet or equal the severity for the disorder under section A, B, C, or D of listing 12.05. *Id.* Most importantly, 12.05(C) states that when a claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function," then he is disabled.

"The ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel,* 236 F.3d 505, 512 (9th Cir. 2001). However, the claimant must satisfy the diagnostic description in the initial paragraph before the ALJ considers whether

the impairment is severe under section 12.05 A, B, C or D. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

An ALJ also has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014). This means that, where the record is ambiguous or "inadequate to allow for proper evaluation of the evidence," the ALJ must inquire further. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

In *McLeod*, the claimant, represented by a lay representative at his administrative hearing, argued that the ALJ had a duty to request more information from the claimant's doctors. *Id.* at 884. The court looked at the record and determined that substantially all of the claimant's medical records were before the ALJ, and there was nothing unclear or unambiguous about the records. *Id.* Therefore, the ALJ had no duty to request more information from the doctors. *Id.* On the other hand, the court found that the ALJ erred when he failed to obtain the claimant's VA disability rating. *Id.* at 886. At the hearing, the claimant testified that he was receiving benefits from the VA because he was unemployable, but that he had no idea whether he had a disability rating. *Id.* at 885. The court concluded that, if the claimant had a disability rating, that rating was relevant to the ALJ's disability determination. *Id.* at 886. The ALJ knew that the record was likely

missing relevant evidence, and it was therefore inadequate. *Id.* This triggered the ALJ's duty to develop the record. *Id.* "The ALJ must be especially diligent when the claimant is unrepresented or has only a lay representative." *Id.* at 885.

Here, the ALJ did not err by failing to consider listing 12.05. Aubert failed to submit any evidence that he had deficits in adaptive functioning manifesting before the age of 22. If this Court adopted Aubert's argument that an ALJ should specifically consider listings, even when there is no evidentiary support that the claimant qualifies under the listing, this would create an unworkable system. ALJs would be forced to specifically list and consider up to 284 pages worth of possible listed impairments. Furthermore, the ALJ did not err when he did not inquire further to develop the record. This duty is triggered only when the record is ambiguous or inadequate to allow for proper evaluation of the evidence. It is undisputed that Aubert's impairment would fit the severity requirement of listing 12.05(C) because Aubert had a full scale IQ of 70 and he suffered from a "physical or other mental impairment imposing an additional and significant work-related limitation of function." However, the evidence is unambiguous that Aubert does not fit the diagnostic description of listing 12.05. The record is replete with evidence concerning Aubert's ability to function normally before his illness began. (Tr. at 115, 118, 374, 375, 381.) The first sign of Aubert's illness started in 2007,

when Aubert was 43. (Tr. at 115, 118). Furthermore, Aubert stated that he "was a nerd growing up," (Tr. at 252), and he graduated from high school with a "B-, B+ average," (Tr. at 253). Finally, on Aubert's application for supplemental security income, Aubert states that he was not disabled prior to age 22. (Tr. at 340).

Aubert argues that his work history provides sufficient evidence on this point. He states that his "entire work history, going back more than 20 years, includes work as a dishwasher, night stocking clerk, and a grocery store worker. Such work history surely shows deficits in adaptive functioning prior to age 22." (Doc. 21 at 8). Such a statement does not create an ambiguity in the record that would trigger the ALJ's duty to develop further. Even if this Court accepted Aubert's work history as evidence of a mental disability, the record only contains evidence of Aubert's work history dating back to 1998, well after Aubert turned 22. Finally, Aubert was represented by counsel at the administrative hearing. It was Aubert's duty to include evidence of significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting before the age of 22, if such evidence existed. The ALJ cannot be held at fault for failing to consider a listed impairment for which there was no evidentiary support; therefore, the Commissioner's decision on this point is affirmed.

### III. Aubert's wife's lay witness testimony

"[A]n ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Such testimony is competent evidence that "cannot be disregarded without comment." *Id.* at 1054. The ALJ can only disregard lay witness testimony if he provides "reasons that are germane to each witness." *Id.* at 1053. However, the ALJ is not required "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. Likewise, this rule applies where the ALJ discredits the claimant's testimony and similar lay witness testimony for the same reasons. *Valentine*, 574 F.3d at 694.

The ALJ found that both Aubert and his wife gave testimony that was "generally credible except to the extent that the claimant and his wife alleged severe disabling depression/bipolar symptoms and uncontrolled seizures and a complete inability to work due to his health and seizure problems." (Tr. at 28.) The ALJ discredited the testimony for several reasons. First, the testimony was inconsistent with objective medical evidence. (*Id.*) Second, there are several

11

discrepancies between the testimony of Aubert and his wife and Aubert's medical history. (*Id.*) Also, the testimony is inconsistent with Aubert's own statements concerning his daily activity. (*Id.*) The ALJ supported these conclusions with references to the record. (*Id.*)

Aubert argues that his wife's testimony cannot be disregarded because she "described limitations beyond those described by Mr. Aubert." (Doc. 21 at 11.) While it is true that Aubert's wife provided additional information in her testimony above and beyond information Aubert provided, (Tr. at 434-35), this testimony still concerned Aubert's "severe disabling depression/bipolar symptoms and uncontrolled seizures and a complete inability to work due to his health and seizure problems." The ALJ's reasons for rejecting this testimony, as listed above, are equally applicable to all of Aubert's testimony as well as his wife's testimony. These reasons are sufficiently clear and convincing to discredit Aubert's testimony and are germane to discredit the testimony provided by Aubert's wife.

Finally, Aubert argues that the ALJ erred by relying on portions of his wife's testimony to make his decision but discrediting other portions. (Doc. 21 at 12.) As the ALJ stated in his decision, he found the testimony to be generally credible, except to the extent the testimony concerned Aubert's disabling mental conditions and complete inability to work due to health and seizure problems.

Aubert does not cite to any authority that stands for the proposition that an ALJ must accept all of a lay witness's testimony or none of it. The ALJ found Aubert's wife's testimony generally credible and, to the extent that he rejected the testimony, he provided germane reasons for doing so.

Accordingly, IT IS ORDERED that the Findings and Recommendations (Doc. 20) are ADOPTED IN FULL.

IT IS FURTHER ORDERED that Aubert's motion for summary judgment (Doc. 13) is DENIED and the Commissioner's decision is AFFIRMED.

Dated this 3rd day of December, 2014.

Donald W. Molloy, District Judge
United States District Court